**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| DARNITA RIGGINS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | No. 2:14-cv-04171-NKL |
| vs. | ) ) | |
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

---

Plaintiff's Suggestions in Opposition to Defendant American Family's
Motion for Summary Judgment

---

# Table of Contents

Table of Authorities ................................................................................................. iii

I.      Introduction................................................................................................1

II.     Plaintiff's Response to American Family's Statement of Uncontroverted
        Material Facts................................................................................................1

III.    Plaintiff's Statement of Additional Uncontroverted Material Facts ...................................4

IV.     Summary Judgment Standard ................................................................................6

V.      Factual Background ........................................................................................7

VI.     Argument ....................................................................................................9

        A.    The Plain Language of American Family's Policy Does Not Allow for the
              Depreciation of Labor Costs in the Calculation of ACV payments.......................9

        B.    The Depreciation of Labor Costs in the Calculation of ACV Payments is
              Contrary to the Fundamental Principle of Indemnity ............................................11

              i.    The Supreme Court of Arkansas's holding that labor cannot
                    be depreciated in the calculation of ACV payments is
                    consistent with indemnity principles ………………………………………12

              ii.   The Eleventh Circuit does not allow the cost of labor to be
                    depreciated when calculating an ACV payment …………………………..14

              iii.  Cases involving the depreciation of sales tax, overhead, and
                    profit are distinguishable and inapplicable …………………………..15

        C.    American Family's Practice of Depreciating Labor in Calculating ACV
              Payments is Inconsistent with Insurance Industry Practice. .................................16

        D.    The Missouri Decisions in *Wells* and *Porter*, Relied on by American
              Family, do Not Address Depreciation of Labor....................................................18

        E.    The Policy Does Not Require Riggins to Repair or Replace Damaged
              Property to Recover ACV ....................................................................................19

VII.    Conclusion ....................................................................................................21

ii

# Table of Authorities

## Cases

*Adams v. Cameron Mut. Ins. Co.*, 430 S.W.3d 675 (Ark. 2013) ...............................12, 13

*Allen v. Cont'l W. Ins. Co*., 436 S.W.3d 548 (Mo. banc 2014) ...................................10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................................6

*Branch v. Farmers Ins. Co., Inc.,* No. 00-6385, 2001 WL 1028385
    (10th Cir. Sept. 4, 2001) ..........................................................................14

*Branch v. Farmers Ins. Co., Inc.,* 311 F. 3d 1241 (10th Cir. 2002) .............................14

*Branch v. Farmers Ins. Co,* 55 P.3d 1023 (Okla. 2002) ..................................................14

*Farber v. Perkiomen Mut. Ins. Co.*, 88 A.2d 776 (Pa. 1952) ........................................14

*Floyd-Tunnell v. Shelter Mut. Ins. Co.*, 439 S.W.3d 215 (Mo. banc 2014)....................10

*Goff v. State Farm Fla. Ins. Co.*, 999 So.2d 684 (Fla. Dist. Ct. App. 2008) ................15

*Janson v. LegalZoom.com, Inc.* 802 F. Supp.2d 1053 (W.D. Mo. 2011) .......................6

*Mills v. Foremost Ins. Co.*, 511 F.3d 1300 (11th Cir. 2008)...........................................15

*Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991) ..............................................6

*Pfeiffer v. Wolfe*, No. 2:10-cv-04001-NKL, 2011 WL 1357489
    (W.D. Mo. Apr. 11, 2011) .........................................................................6

*Porter v. Shelter Mut. Ins. Co.*, 242 S.W.3d 385 (Mo. App. 2007).........................18, 19

*Redcorn v. State Farm Fire & Cas. Co.*, 55 P.3d 1017 (Okla. 2002)......................12, 13

*Salesin v. State Farm Fire & Cas. Co.*, 581 N.W.2d 781 (Mich. 1998) ......................15

*Thomas v. Am. Fam. Mut. Ins. Co.*, 666 P.2d 676 (Kan. 1983).....................................14

*Tolar v. Allstate Texas Lloyd's Co.*, 772 F. Supp.2d 825 (N.D. Tex. 2011) ................15

*Trinidad v. Florida Peninsula Ins. Co.*, 121 So.3d 433 (Fla. 2013) ............................15

*Wells v. Missouri Prop. Ins. Placement Facility*, 653 S.W.2d 207 (Mo. banc 1983)..............18, 19

iii

*Whitehouse Condominium Group LLC v. Cincinnati Ins. Co.*, 569 F. App'x
    413 (6th Cir. 2014)................................................................................................10

## Statutes, Rules, Regulations, and Other Authorities

FED. R. CIV. P. 56(a) ............................................................................................................6

MO. REV. STAT. §§ 379.140-.160. (3d ed. 2010)........................................................18

1 APPLEMAN ON INSURANCE §3.1 (2d ed. 1996)........................................................11

12 COUCH ON INSURANCE §175.5 (3d ed. 2010)........................................................11

California Department of Insurance, *Market Conduct Examination of Allstate Insurance
    Company* (1998)........................................................................................................16

Kansas Commissioner of Insurance, *In the Matter of American Family Mutual Insurance
    Company*, Summary Order, Administrative Docket No. 3673-SO (June 15, 2007) ........17

Montana Commissioner of Securities and Insurance, *In re: the Report of the Market
    Conduct Examination of Big Sky Mutual Insurance Company*, *Findings of Fact,
    Conclusions of Law and Order and Attached Report* (March 23, 2010) ..........................16

Ohio Department of Insurance, *Market Conduct Examination of Sandy and
    Beaver Valley Farmers Mutual Ins. Co. as of June 30, 2011* (May 21, 2012) ..........16, 17

Vermont Department of Banking, Insurance, Securities and Health Care
    Administration, *In re: Acadia Insurance Company*, Stipulation and Order,
    Administrative Docket No. 10-027-I, (Oct. 4, 2010) ......................................................17

iv

## I.    Introduction

The primary question before this Court is whether under Missouri law the language of American Family's homeowner's insurance policy allows for the depreciation of the cost of labor in the calculation of "actual cash value" ("ACV") payments.

The definition of "actual cash value" in Darnita Riggins's policy (incorrectly referred to as Donita Riggins in the policy documents) specifically limits depreciation to particular categories. The policy does not expressly provide for the depreciation of labor. American Family's practice of depreciating labor costs in calculating ACV payments is, as recognized by multiple authorities, contrary to the fundamental principle of indemnity – *i.e.*, restoring the insured to the same position they were in before an insured loss.  Riggins's election to receive an ACV payment simply has no bearing upon whether American Family properly calculated her ACV payment.

American Family's motion for summary judgment should therefore be denied.

## II.    Plaintiff's Response to American Family's Statement of Uncontroverted Material Facts.

For her response to American Family's statement of uncontroverted material facts, plaintiff states:

1.    On April 28, 2012, a hail storm damaged the roof, gutters, screens, and solar lights of Riggins' residence. Declaration of Logan Kingren, Ex. A, ¶ 2.

RESPONSE:  Admitted.

2.    Riggins made a claim for the damage under her American Family homeowner's policy # 24-DD1889-01 ("the Policy"). *Id.*; Missouri Homeowners Policy, Ex. B, Declarations.

RESPONSE:  Admitted.

3.    Riggins made a claim for both her residence's roof, gutters, and screens,

1

categorized by American Family as "dwelling," and for the solar lights, categorized by American Family as "contents." Ex. A, ¶ 2. Plaintiff's Second Amended Complaint for Declaratory and Class Action Relief focuses on "damage to the dwelling on the insured premises" rather than the contents. Doc. 47, ¶ 7.

RESPONSE: Admitted.

4.     The Policy gives an insured two options in the event of property damage: (1) get the cash value of what was damaged at the time it was damaged (actual cash value) or (2) get the money to replace the damaged property (replacement cost). Ex. B at Gold Star Homeowners Amendatory Endorsement, Conditions, p. 1, ¶ (b).

RESPONSE: Admitted.

5.     Under one option, the insurer pays the insured the actual cash value of the part of the building that was damaged, if the building is not repaired or replaced. *Id.* at ¶ (b)(2).

RESPONSE: Admitted.

6.     The Policy defines "actual cash value" as "the *amount it costs to repair or replace* property with property of like kind and quality *less depreciation for physical deterioration and obsolescence*." *Id.* at Missouri Amendatory Homeowners Endorsement, p. 1 (emphasis added).

RESPONSE: Admitted.

7.     The Policy also allows for a second option, replacement coverage, which is an additional payment for "the cost to repair the damaged portion or replace the damaged building, provided repairs to the damaged portion or replacement of the damaged building are completed." *Id.* at Gold Star Homeowners Amendatory Endorsement, Conditions, p. 1, ¶ (b)(1).

RESPONSE: Admitted.

8.     To receive the full replacement cost of the damage, the insured must follow the

2

procedure under the Policy:

> If you receive an actual cash value settlement for damaged property covered by replacement coverage and **you** have not reached **your limit, you** may make a further claim under this condition for replacement cost, provided repairs to the damaged portion or replacement of the damaged building are completed within one year of the date of loss.

RESPONSE:  Admitted.

9.     On May 24, 2012, Scott Grant, a Catastrophe Adjustor employed by American Family, went to Riggins' home and observed the storm-related damage. Ex. A at ¶ 3.

RESPONSE:  Admitted.

10.     On the same day, Mr. Grant sent Riggins an estimate of all damages for the property, based on common prices for labor and materials in the area. *Id*. at ¶ 4.

RESPONSE:  Admitted

11.     The replacement cost value was estimated at $4,491.80, less depreciation in the amount of $368.74. *Id*.

RESPONSE:  Admitted

12.     Based on the estimate and after subtracting Riggins' $250.00 deductible, actual cash value was calculated to be $3,873.06, which Riggins was paid. The estimate explained that actual cash value is replacement cost less depreciation. *Id*.

RESPONSE:  Admitted

13.     The estimate also informed Riggins of how to make a claim for the depreciation and referred her to her Policy for more information. *Id*. at ¶ 5.

RESPONSE:  Admitted

14.     Although Riggins could have received payment from American Family for the amount initially depreciated in the actual cash value calculation if her repair exceeded the ACV

3

payment, she never contacted American Family to recover the depreciation. *Id*. at ¶ 6.

RESPONSE: Admitted

## III.     Plaintiff's Statement of Additional Uncontroverted Material Facts

For her statement of additional uncontroverted material facts, plaintiff states:

1.      A true and accurate copy of American Family's claim file pertaining to the claim of Darnita Riggins for the loss of April 28, 2012 is appended to the parties' joint stipulation. (Ex. 1 hereto, Joint Stipulation).

2.      The residential home owned by Darnita Riggins located at 10301 Lookaway Court in St. Louis County, Missouri ("the Riggins home") was damaged in a hail storm on or about April 28, 2012. The roof, gutters, and downspouts were damaged. (Ex. 2, Defendant's Answer to Second Amended Complaint, ¶ 6).

3.      On that day, the Riggins home was insured by American Family policy No. 24DD188901. The policy included, among other coverages, indemnity coverage for damage to the dwelling on the insured premises due to windstorm or hail. (Ex. 2, Defendant's Answer to Second Amended Complaint, ¶ 7).

4.      American Family had an obligation to pay Riggins pursuant to the terms of the Policy. (Ex. 2, Defendant's Answer to Second Amended Complaint, ¶ 7).

5.      An adjuster inspected damage to the home following the storm and that one estimate of repair costs was in the amount of $4,491.80, which included material and labor. (Ex. 2, Defendant's Answer to Second Amended Complaint, ¶ 10).

6.      American Family depreciated the entire estimated cost of repair, including materials and labor necessary to repair the Riggins home for purposes of its ACV calculation. (Ex. 2, Defendant's Answer to Second Amended Complaint, ¶ 12).

4

7. All costs to replace the roof of the Riggins home, including labor costs to replace the roof and gutters, and material costs, were depreciated by American Family from the estimated repair costs to arrive at an asserted actual cash value. (Ex. 2, Defendant's Answer to Second Amended Complaint, ¶ 13).

8. In its repair estimate, American Family depreciated certain costs by the following amounts in calculating Riggins's actual cash value payment:

| | |
|---|---|
| Replace Soffit & Fascia | $8.34 |
| Remove Gutter guard/screen | $2.81 |
| Replace Gutter guard/screen | $20.61 |
| Haul Debris | $4.74 |
| Remove Flashing | $1.62 |
| Replace Flashing | $8.31 |
| Remove Patio Cover | $29.74 |
| Replace Patio Cover | $292.57 |
| | |
| Total: | $368.74 |

(Ex. 1 hereto, Joint Stipulation, pp. 000006-7).

9. American Family has applied depreciation to the labor component of repair costs for purposes of actual cash value on at least 15,500 claims under form HO-3 in Missouri since 2008. (Ex. 3, Declaration of Joe Beauclaire, ¶ 11).

10. Attached as Exhibit 4 is a true and accurate copy of a sample Farmers Insurance Company homeowner's policy appearing on the website operated by the Missouri Department of Insurance. Missouri Department of Insurance – Homeowners Policies, Farmers Insurance Exchange Next Generation Homeowners Policy, http://insurance.mo.gov/consumers/home/documents/NextGenMO2ed565537_r.pdf (last visited Dec. 15, 2014).

11.     Attached as Exhibit 5 is a true and accurate copy of a sample Country Mutual Insurance Company homeowner's policy appearing on the website operated by the Missouri Department of Insurance. Missouri Department of Insurance – Homeowners Policies, County Mutual Insurance Company Homeowners Policy, http://insurance.mo.gov/consumers/home/documents/CountryMutualhomeownerspolicy.pdf (last visited Dec. 15, 2014).

## IV.     Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of showing both the absence of a genuine issue of material fact and an entitlement to a judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Once a moving party has met its burden, the non-moving party may not rest on the allegations in its pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. If the non-moving party fails to produce such evidence, summary judgment is proper. *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991). However, "summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Pfeiffer v. Wolfe*, No. 2:10-cv-04001-NKL, 2011 WL 1357489 at *3 (W.D. Mo. Apr. 11, 2011) (citing *Anderson* 477 U.S. at 248).

In determining whether summary judgment is proper the court must "look at the record and any inferences to be drawn from it in the light most favorable to the non-moving party." *Janson v. LegalZoom.com, Inc.*, 802 F. Supp.2d 1053, 1057 (W.D. Mo. 2011) (*citing Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 255 (1986)).

6

## V.      Factual Background

On April 28, 2012, a hailstorm damaged Riggins's home.  Riggins made a claim under her American Family homeowner's insurance policy. The loss included damage to her roof, gutters, screens and patio. American Family acknowledges coverage for the claim.  (Ex. 2, Defendant's Answer to Second Amended Complaint, ¶¶ 6-7, 9).

American Family's policy provides indemnity coverage for damage to a dwelling based upon "Actual Cash Value" unless and until actual repair and replacement is completed.   An endorsement to the policy defines "Actual Cash Value" as "the amount it costs to repair or replace property with property of like kind and quality less depreciation for physical deterioration and obsolescence."   The policy does not define the terms "physical deterioration" or "obsolescence." (Policy, Ex. B to American Family Suggestions in Support, Doc. #51-2, p. 000025).

An insured may elect to repair and replace the damage and receive an additional payment above the ACV amount but is not obligated to do so.  If an insured elects to make repairs and replacements, dependent on the circumstances, American Family will issue a "replacement cost" payment to its insured.   (*Id.*, Doc. #51-2, p. 000020, ¶ b(1)).

Riggins received an ACV payment from American Family for the loss of April 28, 2012. The replacement cost value was estimated to be $4,491.80. (American Family Suggestions in Support, Doc. #51, Statement of Uncontroverted Material Facts, ¶ 11). In calculating Riggins's ACV payment, American Family depreciated the entire estimated cost of repair, including materials and labor estimated to be necessary to repair the Riggins home. (Ex. 2, Defendant's Answer to Second Amended Complaint, ¶ 12).

In its repair estimate, American Family depreciated certain costs by the following amounts[1] in calculating Riggins's ACV payment:

| | |
|---|---|
| Replace Soffit & Fascia | $8.34 |
| Remove Gutter guard/screen | $2.81 |
| Replace Gutter guard/screen | $20.61 |
| Haul Debris | $4.74 |
| Remove Flashing | $1.62 |
| Replace Flashing | $8.31 |
| Remove Patio Cover | $29.74 |
| Replace Patio Cover | $292.57 |
| | |
| Total: | $368.74 |

After subtracting these depreciated amounts and a deductible of $250, American Family paid Riggins $3,873.06. (American Family Suggestions in Support, Doc. #51, Statement of Uncontroverted Material Facts, ¶ 12).

Riggins filed suit because American Family improperly depreciated labor in calculating her ACV payment. American Family acknowledges that it depreciated labor in its calculation of Riggins's ACV payment. This was its usual practice. American Family estimates it depreciated labor on at least 15,500 claims in Missouri since 2008. (Ex. 2, Defendant's Answer to Second Amended Complaint, ¶ 13; Ex. 3, Declaration of Joe Beauclaire, ¶ 11).

American Family moved for summary judgment on the basis that its practice of depreciating labor is permitted by the language of the policy. American Family's practice of depreciating labor, however, is not permitted under the policy language, does not comport with the fundamental insurance principle of indemnity, and is therefore contrary to Missouri law. The motion for summary judgment should therefore be denied.

---

[1] Ex. 1, Joint Stipulation, Riggins claim file, pp. 000006-7.

## VI.     Argument

### A.     The Plain Language of American Family's Policy Does Not Allow for the Depreciation of Labor Costs in the Calculation of ACV payments.

The definition of "Actual Cash Value" in the American Family policy does not provide for the depreciation of labor. The policy defines ACV as:

> Actual Cash Value means the amount it costs to repair or replace property with property of like kind and quality less depreciation for physical deterioration and obsolescence.

(Policy, Ex. B to American Family Suggestions in Support, Doc. #51-2, p. 000025). Thus, to calculate an ACV payment, the specific items that may be depreciated, *i.e.*, physical deterioration and obsolescence, are subtracted from the amount it costs to repair or replace the property. In equation form, ACV is calculated as follows:

$$
\begin{array}{rl}
 & \text{Amount it costs to repair or replace property} \\
- & \text{Physical Deterioration} \\
- & \underline{\text{Obsolescence} \hspace{4cm}} \\
= & \text{Actual Cash Value}
\end{array}
$$

While American Family states that "[l]abor is a large, if not the largest, component of the cost to 'repair or replace,'" it fails to explain how labor is encompassed by either "physical deterioration" or "obsolescence." (Memorandum in Support, Doc. #51, p. 8). As the definition of ACV provides, depreciation only applies to (1) physical deterioration; and (2) obsolescence. There is no language in the policy remotely suggesting that depreciation applies to the cost of labor to repair or replace damaged property.

### Obsolescence

Obsolescence is not at issue here. When interpreting an ACV property insurance policy, the term "obsolescence" is properly limited to "functional obsolescence," primarily meaning old technology, *e.g.*, a VHS tape player or "an electrical panel that is no longer acceptable under

9

current codes." *Whitehouse v. The Cincinnati Ins. Co.*, --- Fed. App'x. --, 2014 WL 273480, at *5 (6th Cir. June 17, 2014). American Family cannot make a logical claim or argument that the concept of "obsolescence" remotely applies to Plaintiff's roof, gutters, screens and patio or to the labor that would be required to install their components.

## Physical Deterioration

Notably, in its ACV calculation, American family depreciated an item of labor, "haul debris," by $4.74. (Ex. 1, Joint Stipulation, Riggins claim file, pp. 000007). As obsolescence does not apply, the question arises as to whether the cost to "haul debris" can logically be considered as part of the "physical deterioration" of Riggins's roof, gutters, screens and patio. It cannot.

"The general rule in interpreting an insurance policy is to give the language its plain meaning." *Floyd-Tunnell v. Shelter Mutual Insurance Company*, 439 S.W.3d 215, 217 (Mo. banc 2014) (citing *Allen v. Const'l W. Ins. Co*., 436 S.W.3d 548, 554 (Mo. banc 2014)). The website www.businessdictionary.com defines "physical deterioration" as "loss in the value of assets, commodities, goods, materials, etc., due to exposure to the elements and wear and tear associated with their storage and use." BusinessDictionary.com – Physical Deterioration, http://www.businessdictionary.com/definition/physical-deterioration.html (last visited Dec. 17, 2014). Applying this common definition, it cannot be reasonably argued that labor is part of the physical deterioration to Riggins's roof, gutters, screens and patio.

American Family could have defined ACV to authorize the depreciation of labor costs. In fact, several insurance companies include such a definition in their policies. For example, the Farmers Insurance homeowner's policy defines ACV as:

> [T]he reasonable replacement cost at time of loss less deduction for physical deterioration and depreciation. We may depreciate all replacement costs, including by way of example but without limitation *costs of materials and labor*.

10

(Ex. 4, Farmer's policy, p. 5) (emphasis added). Likewise, the Country Mutual policy permits the depreciation of labor:

> In determining depreciation "we" will consider wear and tear, deterioration, obsolescence, age, physical condition and reduced market value of the property. The rate of depreciation shall be the same *for both labor and materials*.

(Ex. 5, Country Mutual policy, p. 2) (emphasis added).[2] Unlike Farmers Insurance and Country Mutual, American Family chose not to include language in its policy permitting the depreciation of labor.

### B. The Depreciation of Labor Costs in the Calculation of ACV Payments is Contrary to the Fundamental Principle of Indemnity.

Property insurance, such as Riggins's policy, creates a contract of indemnity between the insurer and the insured. 12 COUCH ON INSURANCE §175.5 (3d ed. 2010). A fundamental principle of indemnity is that an insured party should not be put in a better or worse financial position then before an insured loss, but should instead be restored to the position they were in before an insured loss. 1 APPLEMAN ON INSURANCE §3.1 (2d ed. 1996). American Family's depreciation of labor in calculating Riggins's ACV payment put her in a worse financial position, contrary to the principle of indemnity. *See* 12 Couch on Insurance §175.5 (3d Ed. 2010).

Whether labor may be depreciated in calculating an ACV payment has not been directly addressed in Missouri. The Supreme Courts of Arkansas and Oklahoma are the only two courts to have directly addressed this issue. Insurance regulators in various states have also weighed in.

---

[2] These sample policies appear on the website maintained by the Missouri Department of Insurance. Missouri Department of Insurance - Homeowners Policies, Farmers Insurance Exchange Next Generation Homeowners Policy, http://insurance.mo.gov/consumers/home/documents/NextGenMO2ed565537_r.pdf (last visited Dec. 15, 2014); Missouri Department of Insurance - Homeowners Policies, County Mutual Insurance Company Homeowners Policy, http://insurance.mo.gov/consumers/home/documents/CountryMutualhomeownerspolicy.pdf (last visited Dec. 15, 2014).

The Arkansas decision, as discussed below, is most consistent with the fundamental principle of indemnity.

      **i.**      **The Supreme Court of Arkansas's holding that labor cannot be depreciated in the calculation of ACV payments is consistent with indemnity principles.**

The Supreme Court of Arkansas concluded that labor could not be depreciated when determining the actual cash value of a covered loss because such depreciation would be contrary to the basic principle of indemnity. *Adams v. Cameron Mut. Ins. Co.*, 430 S.W.3d 675, 679 (Ark. 2013). The insureds in *Adams* made a claim under their homeowner's policy after their home was damaged by a tornado. *Id.* at 676. The policy provided that the insureds would be paid "actual cash value" (a term not defined in the policy) for any covered loss. *Id.* In calculating actual cash value, the insurance company depreciated materials and labor needed to repair the insureds' residence. *Id.*

The plaintiffs in *Adams* challenged the depreciation of labor, arguing that "depreciation is conceptually inapplicable to labor." *Id.* The court agreed with the plaintiffs. Adopting the rationale stated by Justice Boudreau in his dissent in the Supreme Court of Oklahoma's decision in *Redcorn* v. *State Farm Fire & Cas. Co.,* 55 P.3d 1017 (2002), the Supreme Court of Arkansas rejected the entire concept of depreciating labor in an indemnity insurance policy:

> It is important to keep in mind that indemnity is the basis and foundation of all insurance law. The objective of indemnity is to put the insured in as good a condition, as far as practicable, as he would have been if the loss had not occurred, that is to reimburse the insured for the loss sustained, no more, no less. To properly indemnify Redcorn, State Farm should pay him the actual cash value of the shingles, depreciated for wear and tear, plus the cost of their installation.... *Allowing the insurer to depreciate the cost of labor would leave the insured with a significant out-of-pocket loss, a result that is inconsistent with the principle of indemnity.*

*Adams,* 430 S.W.3d at 678-79 (quoting *Redcorn,* 55 P.3d at 1022-23 (Boudreau, J., dissenting)

Case 2:14-cv-04171-SRB   Document 58   Filed 12/18/14   Page 16 of 25

(emphasis in original, internal citations, quotations and brackets omitted). Thus, the court concluded: "[w]e, like Justice Boudreau and his fellow dissenters, simply cannot say that labor falls within that which can be depreciable." *Id.* 430 S.W.3d at 679.

According to the *Adams* court, depreciating labor not only violates the principal of indemnity, but is illogical:

> The shingles are of course logically depreciable. As they age, they certainly lose value due to wear and tear. . . . Labor, on the other hand, is not logically depreciable. Does labor lose value due to wear and tear? Does labor lose value over time? What is the typical depreciable life of labor? Is there a statistical table that delineates how labor loses value over time? I think the logical answers are no, no, it is not depreciable, and no. The very idea of depreciating the value of labor is illogical.

*Id.* at 678 (quoting *Redcorn,* 55 P.3d at 1022-23 (Boudreau, J., dissenting)).

As an additional basis for its decision, the *Adams* court determined that the phrase "actual cash value," as used in the Cameron policy, was ambiguous and therefore required a construction favorable to the insured. 430 S.W.3d at 679 ("Moreover, having found the term 'actual cash value' ambiguous as used in the policy at issue, we must construe the policy liberally in favor of the Adamses and strictly against Cameron."). *Adams* confirms that labor costs cannot be depreciated when determining ACV.

While a 5-3 majority of the Oklahoma Supreme Court in *Redcorn* found it proper to depreciate labor for the repair of a roof, *Redcorn* was not the last word on depreciation of labor in Oklahoma.

In a decision issued the same day as *Redcorn*, the Supreme Court of Oklahoma drew a distinction between depreciating replacement and removal costs in holding that removal costs are

13

not depreciable.[3]   *Branch v. Farmers Ins. Co,* 55 P.3d 1023 (Okla. 2002).   In drawing this distinction, the *Branch* court found, "labor costs to tear off an old roof are not included as a necessary part of the replacement costs of installing a new roof." *Id.* at 1028.   The court thereby concluded, "the labor costs in debris removal may not be depreciated." *Id.*

In addition to Arkansas, other state courts have also found that the depreciation of labor in the calculation of ACV payments is improper.   The Supreme Court of Pennsylvania has recognized that labor should not be depreciated in the calculation of ACV payments.   *Farber v. Perkiomen Mut. Ins. Co.*, 88 A.2d 776 (Pa. 1952).   The insurance company in *Farber* argued that it could depreciate labor in calculating an actual cash value payment.   *Id.* at 777.   In holding that labor could not be depreciated at the insurance company argued, the *Farber* court noted:

> The pertinent inquiry is, - What is the amount of the insured's loss? As is well known, present-day costs of labor and materials greatly increase the expense of building-restoration which, necessarily, must be done with the labor and materials currently available. If new conditions made the repair work more costly, the extent of the damage to the insured is automatically the greater by so much. *And, as it is a part of the insurer's undertaking to make the insured whole insofar as possible within the limits of the policy, the augmented damage due to increased costs of restoration is the liability of the insurer* up to the specified amount of the insurance. . . .

*Id.* at 778 (emphasis added); *see also Thomas v. Am. Fam. Mut. Ins. Co.*, 666 P.2d 676 (Kan. 1983).

Thus, the *Adams* decision is not an outlier, but is consistent with indemnity principles.

### ii.   The Eleventh Circuit does not allow the cost of labor to be depreciated when calculating an ACV payment.

Defendant mistakenly contends that the Eleventh Circuit recognizes that "all items in a contractor's bid should be depreciated" including labor.   (Doc. 51, p. 13).   In reality, the Eleventh

---

[3] The holding in *Branch* was in response to certified question from a federal district court. *See Branch v. Farmers Ins. Co., Inc.,* No. 00-6385, 2001 WL 1028385 (10th Cir., Sept. 4, 2001); *Branch v. Farmers Ins. Co., Inc.,* 311 F.3d 1241 (10th Cir. 2002).

Circuit never addressed depreciation but simply addressed whether "overhead and profit charges are included within the 'cost to repair or replace.'" *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1305-06 (11th Cir. 2008).

The plaintiffs in *Mills* filed suit after an insurance company omitted contractors' overhead and profit in calculating the insureds' ACV payment. *Id.* at 1302. The policy defined ACV as, "the cost to repair or replace property with new materials of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence." *Id.* at 1304. In ruling in favor of the insureds, the *Mills* court concluded that "a contractor's overhead and profit charges are included within the 'cost to repair or replace'" because such charges "are well-recognized types of costs routinely charged [and therefore] fall within the 'cost to repair or replace.'" *Id.* Thus, the *Mills* court simply addressed whether items in a bid should be included in the cost to repair or replace, not whether these items were properly depreciated.

### iii. Cases involving the depreciation of sales tax, overhead, and profit are distinguishable and inapplicable.

None of the cases cited by American Family concerning depreciation of sales tax, overhead, and profit address the issue of whether labor could be depreciated when calculating an ACV payment. *Trinidad v. Florida Peninsula Ins. Co.*, 121 So.3d 433 (Fla. 2013) (addressing whether overhead and profit could be withheld before repairs were completed); *Goff v. State Farm Fla. Ins. Co.*, 999 So.2d 684, 689 (Fla. Dist. Ct. App. 2008) (addressing "whether overhead and profit is depreciable in determining actual cash value"); *Tolar v. Allstate Texas Lloyd's Co.*, 772 F. Supp.2d 825, 834 (N.D. Tex. 2011) (denying summary judgment because "deduction of [overhead and profit] and sales tax is not improper"); *Salesin v. State Farm Fire & Cas. Co.*, 581 N.W.2d 781, 791-92 (Mich. 1998) (holding that "[t]here is no logical reason . . . for deducting estimated contractor's overhead and profit when [making an ACV payment]"). Simply put, none

of the cases cited by American Family concerning the depreciation of sales tax, overhead and profit address whether labor should be depreciated when calculating an ACV payment. Simply stated, those decisions have no bearing upon whether labor should be depreciated.

### C. American Family's Practice of Depreciating Labor in Calculating ACV Payments is Inconsistent with Insurance Industry Practice.

The insurance industry practice is not to depreciate labor in ACV property claims. *See*, *e.g.*, California Department of Insurance, *Market Conduct Examination of Allstate Insurance Company et al.* at 16 (1998) (Ex. 6) (acts of depreciating labor charges "are inconsistent with industry practice and are violations of" statutory fair claims practices laws); Ohio Department of Insurance, *Market Conduct Examination of Sandy and Beaver Valley Farmers Mutual Ins. Co. as of June 30, 2011*, at 6 (May 21, 2012) (Ex. 7) (insurer should not depreciate labor on actual cash value claims "in order to be consistent with the industry practice of not depreciating labor").

When insurance regulators learn that homeowner insurance companies are depreciating labor, the regulators seek to stop the practice. For example, the Montana Commissioner of Securities and Insurance examined Big Sky Mutual Insurance Company in 2010. The examiners criticized the company's handling of actual cash value claims because "depreciation was improperly applied to labor, instead of just materials, in claims that were adjusted directly by the Company without an independent adjuster." Montana Commissioner of Securities and Insurance, *In re: the Report of the Market Conduct Examination of Big Sky Mutual Insurance Company*, *Findings of Fact, Conclusions of Law and Order and Attached Report*, p. 6 (March 23, 2010) (Ex. 8).

Similarly, the Ohio Department of Insurance recently examined the claims handling practices of Sandy and Beaver Valley Farmers Mutual Insurance Company. *Market Conduct*

*Examination of Sandy and Beaver Valley*, *supra*, Ohio Department of Insurance, at 6 (Ex. 7). The examination found that "[d]uring interviews with the examiners, the Company indicated that its procedure was not to depreciate labor. The Company should ensure that independent adjuster estimates do not include labor depreciation, in order to maintain consistency between claimant settlements and adherence to Company policies and procedures." *Id*. at 10.

American Family is not the only insurer that has attempted to depreciate labor. In 2010, Vermont's Department of Banking, Insurance, Securities and Health Care Administration investigated Acadia Insurance Company. "[T]he Department concluded, after investigation, that Respondent's method of adjusting certain first party actual cash value property damage claims constituted an unfair claim settlement practice in that Respondent settled these first party claims reviewed by the Department by offering and/or paying a settlement amount net of depreciation of labor." Vermont Department of Banking, Insurance, Securities and Health Care Administration, *In re: Acadia Insurance Company*, Stipulation and Order, Administrative Docket No. 10-027-I, at 2 (Oct. 4, 2010) (Ex. 9). Acadia was required to return funds that were improperly withheld as labor depreciations in ACV calculations, with interest, to its policyholders. *Id*. at 4.

In fact, American Family has previously been penalized for its practice of depreciating labor for ACV calculations. In 2007, the Kansas Commissioner of Insurance received a complaint from a consumer that "American Family sought to depreciate the labor associated with the removal of a roof on his property which was damaged in a storm." *In the Matter of American Family Mutual Insurance Company*, Summary Order, Administrative Docket No. 3673-SO at 1, ¶3 (June 15, 2007) (Ex. 10). After unreasonably delaying its response to the insurance commissioner, American Family finally admitted it depreciated labor on the consumer claim, but asserted "that depreciation of labor was appropriate and Mr. Egan's claim was settled correctly." *Id*. at 2, ¶ 11.

The Kansas Insurance Commissioner disagreed. The Commissioner found the practice violated Kansas law, and fined American Family $1,500 for not timely admitting its misconduct and for depreciating labor. *Id.* at 3-4, ¶¶ 6-9.

**D.** **The Missouri Decisions in *Wells* and *Porter,* Relied on by American Family, do Not Address Depreciation of Labor.**

American Family relies on the decisions in *Wells v. Missouri Property Ins. Place. Fac.*, 653 S.W.2d 207 (Mo. banc 1983) and *Porter v. Shelter Mutual Ins. Co.*, 242 S.W.3d 385 (Mo. App. 2007), for the proposition that depreciation may be applied to the full cost of replacement, including labor, under an ACV policy. Neither case supports that proposition.

The plaintiffs in *Wells*, having suffered property damage in a fire, claimed they were entitled to recover the value of the property fixed at the time the policy was written, under Missouri's valued policy statutes, MO. REV. STAT. §§ 379.140-.160. The court determined, however, that the valued policy statutes did not apply to plaintiffs' policies, such as plaintiffs', issued under Missouri's FAIR Plan. *Id*. at 213. That is because FAIR policies are statutory policies for high-risk properties to which the valued policy statutes do not apply. Instead FAIR policies are ACV policies. *Id.* at 212-13.

Notably, the court in *Wells* expressly declined to address whether the *method* to calculate depreciation used by the insurer was correct:

> Smith makes no allegation that depreciation was improperly calculated or that the actual cash value of the property at the time of the loss was greater than the amount respondent paid him pursuant to the policy.

*Id*. at 214. The court in *Wells* never addressed, directly or indirectly, the question of whether labor can be depreciated in calculating actual cash value. And, as the policies in *Wells* were all FAIR policies, the decision in *Wells* has no bearing on free-market policies like that issued to Riggins.

Likewise, *Porter v. Shelter Mutual Ins. Co.*, 242 S.W.3d 385 (Mo. App. 2007) does not address the question of whether labor can be depreciated in calculating ACV. Instead, the issue was whether an insurance company could offer its insureds a choice between ACV and replacement value where replacement value was conditioned on actual repair or replacement of the damaged property.

The plaintiffs in *Porter* argued that they were entitled to full replacement value without actually repairing or replacing their damaged property. The court held that the language of the Shelter policy conditioned payment of full repair or replacement value on actual repair or replacement. *Id.* at 391. The court pointedly noted that it was not deciding whether Shelter's method of calculating actual cash value was correct in stating, "this opinion does not address whether the method employed to calculate actual cash value was appropriate." 242 S.W.3d at 387 n. 2. Neither *Wells* nor *Porter* support American Family's assertion that labor may be depreciated in the calculation of actual cash value.

### E. The Policy Does Not Require Riggins to Repair or Replace Damaged Property to Recover ACV.

American Family contends that Riggins is barred from recovery of the deducted depreciation because she did not elect to repair or replace the property and thereby receive full replacement cost. This contention is beside the point. Riggins does not seek recovery of amounts depreciated for physical deterioration or obsolescence, which can only be recovered under the full replacement cost. Here, the question is whether labor can be depreciated in calculating ACV, regardless of whether she chose to repair or replace her damaged property.

The Policy gives an American Family insured two options in the event of property damage: (1) receiving the ACV of the damaged property, without any requirement of repair or replacement,

19

and (2) repairing or replacing the damaged property and receiving the replacement cost, "provided repairs to the damaged portion or replacement of the damaged building are completed." (Policy, Ex. B to American Family Suggestions in Support, Doc. #51-2, p. 000020; *see also* Defendant's Statement of Uncontroverted Material Facts, ¶¶4-5, describing actual cash value and replacement cost value payments as two options).

The insured's right under the policy to receive actual cash value for a loss is not conditioned upon the insured repairing or replacing the damage property. The policy states:

> (2) Actual Cash Value.
> If at the time of loss, the Increased Building Limit Coverage as provided under the Supplementary Coverages - Section I applies, and the building is not repaired or replaced, **we** will pay the actual cash value at the time of loss of the damaged portion of the building up to the limit applying to the building.

Policy, Ex. B to American Family Suggestions in Support, Doc. #51-2, p. 000020, ¶b(2); (emphasis in original). In short, the policy contemplates that an insured may elect not to repair the damage and receive an ACV payment, thereby foregoing receiving full replacement cost.

American Family's assertion that Riggins "was required to show that she completed repairs to the property to receive an additional payment," (Doc. #51, p. 6), confuses plaintiff's claim. Riggins is not asserting that she is entitled to full replacement value for her loss. Rather, she asserts she is entitled to an ACV payment to reflect the ACV without an unauthorized deduction for the deprecation of labor costs. Riggins simply exercised her right under her policy to receive an actual cash value payment.

In short, whether Riggins completed repairs to her property is irrelevant to her claim that American Family failed to pay her the full ACV amount to which she is entitled under her policy.

## VII. Conclusion

For the foregoing reasons, Plaintiff Darnita Riggins requests that Defendant American Family's motion for summary judgment be denied.

**BUTSCH ROBERTS & ASSOCIATES LLC**

By: /s/ David T. Butsch
    David T. Butsch #37539MO
    Christopher E. Roberts #61895MO
    231 South Bemiston Ave., Suite 260
    Clayton, MO 63105
    (314) 863-5700 (telephone)
    (314) 863-5711 (fax)
    butsch@butschroberts.com.
    roberts@butschroberts.com

**GREEN JACOBSON P.C.**

By: /s/ Joe D. Jacobson
    Joe D. Jacobson #33715MO
    7733 Forsyth Blvd., Suite 700
    St. Louis, Missouri 63105
    (314) 862-6800 (telephone)
    (314) 862-1606 (fax)
    Jacobson@stlouislaw.com

    Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served via the Court's electronic filing system on this 18th day of December, 2014 to all counsel of record.

/s/ David T. Butsch

21