MARKET CONDUCT EXAMINATION REPORT

OF

# Allstate Insurance Company
(NAIC # 19232)

# Allstate Indemnity Company
(NAIC # 19240)

NORTHBROOK, ILLINOIS

## STATE OF CALIFORNIA



## DEPARTMENT OF INSURANCE

# TABLE OF CONTENTS

|   | PAGE |
|---|---|
| CONFIDENTIALITY STATEMENT | 1 |
| INTRODUCTION | 2 |
| AUTHORITY | 2 |
| DURATION OF EXAMINATION | 2 |
| PURPOSE OF EXAMINATION | 3 |
| COMPANY PROFILE | 3 |
| NORTHRIDGE CLAIMS PROCEDURES | 4 |
| SCOPE OF THE EXAMINATION | 4 |
| GLOSSARY | 6 |
| EXECUTIVE SUMMARY | |
|     Overview of Findings | 8 |
|     Table of Total Citations | 10 |
| SUMMARY OF CRITICISMS AND INSURER COMPLIANCE ACTIONS | 12 |
| TABLES OF SPECIFIC FINDINGS | |
|     Allstate Insurance Company | |
|         Homeowners-Closed-Paid | 18 |
|         Homeowners-Closed/CWP | 25 |
|         Homeowners-Open | 25 |
|         Fire-Closed-Paid | 31 |
|         Fire-Closed/CWP | 35 |
|         Landlord-Closed-Paid | 36 |
|         Landlord-Closed/CWP | 47 |
|         Landlord - Open | 47 |
|         Renters-Closed-Paid | 48 |
|         Renters-CWP/Denied | 49 |
|         Renters-Open | 50 |
|         Condo-Closed-Paid | 50 |
|         Condo-Closed/CWP | 51 |
|         Condo-Open | 52 |
|         Mobile Home -Closed-Paid | 53 |

        Mobile Home-Closed/CWP .................................... 57  
        Mobile Home-Open .......................................... 58  
Allstate Indemnity Company  
        Homeowners-Closed-Paid ..................................... 58  
        Homeowners-Closed/CWP ..................................... 59  
        Renters-Closed-Paid ........................................ 59  
        Renters-Closed/CWP ........................................ 60  

LIST OF EXHIBITS ................................................. 61  

RECOVERIES ..................................................... 62  

ACKNOWLEDGMENT ............................................... 67  

AFFIDAVIT ....................................................... 68

# CONFIDENTIALITY STATEMENT

The Market Conduct Examination Report contained herein, including any addendum hereto, is CONFIDENTIAL unless and until the Insurance Commissioner, by the authority vested in him or her pursuant to Section 735.5 of the California Insurance Code, determines otherwise.

## INTRODUCTION

This report developed by the Market Conduct examiners is a report written, in general, by exception. In addition to general information, the report contains specifics concerning the categories of claims examined and the details of non-compliant or problematic activities discovered during the course of the examination. Findings as respects claim files reviewed which did not reflect deficiencies were omitted. All unacceptable or non-compliant activities may not have been discovered, however, and failure to identify, comment on, or criticize improper activities does not constitute acceptance of such activities.

Due to unforeseen circumstances, the on-site portion of this examination was terminated unexpectedly on 4/27/98. Findings identified in this report reflect all documents reviewed and information gathered prior to the on-site termination.

It should be noted that a review of litigated files by the CDI Legal Division will be the subject of a report issued under separate cover.

## AUTHORITY

The Market Conduct Examination of Allstate Insurance Company and Allstate Indemnity Company (hereafter referred to as "Allstate" or "the Companies") was conducted pursuant to the authority granted under Part 2, Chapter 1, Article 4, Sections 730, 733, 736, and Article 6.5, Section 790.04 of the California Insurance Code; and Title 10, Chapter 5, Subchapter 7.5, Section 2695.3(a) of the California Code of Regulations.

## DURATION OF EXAMINATION

The on-site examination of the non-litigated files was conducted January 12, 1998 through April 27, 1998 at the Companies' regional claims office located at 10100 Pioneer Boulevard, Santa Fe Springs, California and continued periodically (off site) through November 18, 1998.

2

## PURPOSE OF EXAMINATION

The examination was conducted for the purpose of evaluating the Companies' compliance with contractual obligations, its own procedures, the California Insurance Code, the Unfair Claims Settlement Practices Regulations, Fair Claims Practices (as applicable), applicable case law, and other applicable legal requirements.

This examination was conducted to review the Companies' claims handling practices with respect to claims presented for losses incurred as a result of the California earthquake of January 17, 1994, a.k.a. The Northridge Earthquake.

## COMPANY PROFILE

Allstate Insurance Company is an affiliated reinsurer for Allstate Indemnity and reinsures virtually all of the latter company's business. Allstate Insurance Company was incorporated on February 9, 1931 under the laws of Illinois and was licensed to commence business on April 17 of the same year. This entity is licensed to do business in all states, Puerto Rico, The District of Columbia and all provinces of Canada.

Allstate Indemnity Company was incorporated on July 7, 1960 and began business on December 12 of the same year. Business of the company was conducted under the title " National Emblem Insurance Company" from inception until December 14, 1973, when the present corporate name was adopted. For additional information concerning financial operations, liquidity, and operational information, refer to the 1997 edition of Best's Insurance Reports - Property/Casualty .

Both Allstate Insurance Company and Allstate Indemnity Company are wholly owned by The Allstate Corporation, a publicly traded holding company as reported in the 1997 edition of Best's Insurance Reports - Property/Casualty . **California ranks first as a source of direct premium writings for Allstate Indemnity Company and second for Allstate Insurance Company.**

3

Direct Premium Writings -

| Year | Company | California | Percentage of Written Premium |
|------|---------|------------|-------------------------------|
| 1996 | Allstate Indemnity Co. | $481,351,000 | 12.1% |
| 1996 | Allstate Insurance Co. | $1,384,850,000 | 10.4% |

A copy of the "Best" report is attached as Exhibit I-1).

## NORTHRIDGE CLAIMS PROCEDURES

The Companies advised that as a result of the Northridge Earthquake, an unprecedented increase in claims volume was experienced. In order to facilitate the claims handling process, Allstate undertook various actions. These actions are outlined in Exhibit I-2.

## SCOPE OF THE EXAMINATION

The examiners reviewed 808 non-litigated files drawn from populations of Northridge earthquake claims which were processed at the previously mentioned Santa Fe Springs, California location. Representative samples were selected and specific files were reviewed as follows:

## ALLSTATE INSURANCE COMPANY

| Category | Population | Sample |
|----------|------------|--------|
| Homeowners-Closed Paid | 17,945 | 74 |
| Homeowners-Closed/CWP | 10,216 | 71 |
| Homeowners-Open | 556 | 42 |

4

| Category | Population | Sample |
|---|---|---|
| Fire-Closed Paid | 188 | 52 |
| Fire-Closed/CWP | 224 | 49 |
| Landlord-Closed Paid | 3,491 | 71 |
| Landlord-Closed/CWP | 887 | 45 |
| Landlord-Open | 16 | 6 |
| Renters-Closed-Paid | 1,294 | 50 |
| Renters-Closed/CWP | 510 | 43 |
| Renters-Open | 6 | 2 |
| Condo-Closed-Paid | 677 | 50 |
| Condo-Closed/CWP | 685 | 54 |
| Condo-Open | 134 | 34 |
| Mobile Home-Closed-Paid | 1664 | 46 |
| Mobile Home-Closed/CWP | 654 | 45 |
| Mobil Home-Open | 5 | 2 |
| Sub-total | 39,152 | 736 |

## ALLSTATE INDEMNITY

| Category | Population | Sample |
|---|---|---|
| Homeowners-Closed-Paid | 2 | 2 |
| Homeowners-Closed/CWP | 1 | 1 |
| Renters-Closed-Paid | 297 | 39 |
| Renters-Closed/CWP | 143 | 30 |
| Sub-total | 443 | 72 |
| Total | 39,595 | 808 |

Actual file selection was accomplished through the Market Conduct Bureau's automated random sampling program.

5

## GLOSSARY

ACV: Actual Cash Value

ALE: Additional Living Expense

AS: Appurtenant Structure

CDI: California Department of Insurance

CIC: California Insurance Code

Condo: Condominium

CWP: Closed Without Payment

Delay: Claims handling must reflect compliance with standards of timeliness contained in the Unfair Claims Settlement Practices Regulations. Specified types of processing transactions enumerated in the Regulations (e.g., acknowledgment and payment) are to be handled immediately, but in no event beyond the maximum number of days specified in the CIC and/or Regulation.

EQ: Earthquake

Error: Any act considered to be a violation of the UCP Regulations or CIC 790.03(h); or any act prohibited by the CIC.

Examiners: CDI/Consumer Services Division/Market Conduct Bureau.

Faulty documentation: Absence of billings, drafts, letters, diary notes, date stamps and

6

other essential information substantiating the handling or disposition of the claim; the inclusion of material not related to the file; the misdirection of correspondence (including form letters) to parties involved in the settlement process; the failure to fully comply with existing CDI regulatory requirements pertaining to documentation.

Hold Back: With reference to claims that involve policies which include RC coverage: An amount withheld by Allstate until proof of replacement of an item is received. The amount represents the difference between RC and the ACV.

Hold Back Recovery Process: This process consists of: (1) Notifying the policyholder that proof of replacement is required in order to receive the "hold back". (2) Receiving proof of replacement from the policyholder. (3) Issuing payment based on the difference between the RC and the ACV.

HO: Homeowners (policy)

RC: Replacement Costs

Referral: Question or questions submitted to the Companies by the Examiners, as regards to claim files, in order to verify facts, request additional documentation, request that additional payments be issued, question procedures, or other reasons as deemed necessary.

SDA: Structural Damage Analyst (contracted)

TBD: To Be Determined

UCP Regulation(s): Unfair Claims Settlement Practices Regulations, of the California Code of Regulations, Title 20, Chapter 5, Subchapter 7.5 effective prior to My 10, 1997.

7

## EXECUTIVE SUMMARY
### (OVERVIEW OF FINDINGS)

As indicated in the Scope of the Examination section, the Market Conduct Staff examiners reviewed 808 non-litigated claim files in which 439 claims handling violations of the UCP Regulations and /or CIC were identified within 192 files. Errors detected involve deficiencies noted across sample lines. However, the majority of significant errors were discovered in the Homeowners Paid and Landlord Paid samples. Significant errors include: unsupported depreciation reductions; failure to explain settlement reductions; failure to include Replacement Cost amounts as a part of the initial settlement which is contrary to Allstate's procedures (Northridge EQ only); failure to explain the hold back recovery process and/or debris removal benefits; inadequate investigations; and low settlement offers (in some instances). Additionally, while not cited as specific errors, the examiners noted that the Companies depreciated the cost of labor on items which were to be entirely replaced.

The findings of this examination indicate that many of Allstate's claims handling practices affect all settlements of first party property losses and are not necessarily exclusive to earthquake claims.

The review of the litigation files will be presented under a separate report.

While specific citations are identified in the **SPECIFIC FINDINGS** section of this report, the following is a statistical overview:

| Category | No. Of Files | No. Of files with Citations | No. Of Citations |
|---|---|---|---|
| HO Paid | 76 | 38 | 90 |
| HO CWP | 72 | 3 | 3 |
| HO Open | 42 | 22 | 54 |
| Fire Paid | 52 | 23 | 51 |
| Fire CWP | 49 | 0 | 0 |
| Landlord Paid | 71 | 40 | 139 |
| Landlord CWP | 45 | 2 | 2 |
| Landlord Open | 6 | 2 | 4 |
| Renters Paid | 89 | 5 | 10 |
| Renters CWP | 73 | 2 | 2 |
| Renters Open | 2 | 1 | 2 |
| Condo Paid | 50 | 13 | 15 |
| Condo CWP | 54 | 3 | 3 |
| Condo Open | 34 | 8 | 8 |
| Mobile Home Paid | 46 | 22 | 45 |
| Mobile Home CWP | 45 | 6 | 7 |
| Mobile Home Open | 2 | 2 | 4 |
| Total: | 808 | 192 | 439 |

9

The following is an overview of citations:

| TABLE OF TOTAL CITATIONS ||||
|---|---|---|---|
| UCP/CIC | Description | Allstate Insurance Company Number of Citations | Allstate Indemnity Company Number of Citations |
| 2695.3(a) 790.03(h)(5) 790.03(h)(3) | Unsupported Depreciation Reduction. | 124 | 2 |
| 2695.3(a) 790.03(h)(3) | Claim file did not contain all documents, notes and work papers. | 14 | 0 |
| 2695.(4)(a) 790.03(h)(1) 790.03(h)(3) | Failure to explain settlement reductions to insured. | 124 | 2 |
| 2695.(4)(a) 790.03(h)(1) 790.03(h)(3) | Policyholder not advised of hold back recovery process or not advised that debris removal coverage was available (in excess of policy limits) and/or Company misrepresented policy provisions in some other manner. | 60 | 0 |
| 2695.5(a) 790.03(h)(2) 790.03(h)(3) | Company failed to acknowledge claim within the required time frame. | 1 | 0 |
| 2695.6(a) 790.03(h)(3) 790.03(h)(5) | Company failed to perform necessary, proper, timely investigation. Inadequate or incorrect initial inspections. | 29 | 0 |
| 2695.7(b) 790.03(h)(4) | Company did not accept or deny claim within required time frame. | 1 | 0 |
| 2695.7(b)(1) 790.03(h)(3) | Factual basis for denial not stated in writing. | 3 | 0 |
| 2695.7(b)(3) 790.03(h)(3) | Denial did not advise the policyholder that the claim may be reviewed by the CDI. | 4 | 0 |
| 2695.7(c)(1) 790.03(h)(3) | Failure to send 30 day status letters. | 3 | 0 |
| 2695.7(d) 790.03(h)(3) | Company sought information not reasonably required for or material to the resolution of the claim. | 2 | 0 |
| 2695.7(g) 790.03(h)(3) | Company failed to pay RC with initial settlement which is contrary to their procedures. | 40 | 0 |
| 2695.7(g) 790.03(h)(5) | Low Settlement | 21 | 0 |

10

| TABLE OF TOTAL CITATIONS | | | |
|---|---|---|---|
| UCP/CIC | Description | Allstate Insurance Company Number of Citations | Allstate Indemnity Company Number of Citations |
| 2695.7(h) 790.03(h)(5) | Company did not tender payment within required time frame. | 1 | 0 |
| 790.03(h)(3) 790.03(h)(5) | Depreciation of Labor on the repair (versus replacement) of an item. | 6 | 0 |
| 1872.4 | Company failed to report a suspected fraudulent claim to CDI. | 2 | 0 |
| Sub - Total: | | 435 | 4 |
| Total Non-Litigated Claims Citations: 439 | | | |

11

## SUMMARY OF CRITICISMS and INSURER COMPLIANCE ACTIONS

The following is a brief summary of the major criticisms that were developed during the course of this examination. In response to each criticism, the Companies are required to identify remedial/corrective action(s) that has/have been or will be taken to correct the deficiency. Regardless of the remedial actions taken or proposed by the Companies, it is the Companies' obligation to ensure that compliance is achieved.

1. **Unsupported Depreciation:** The examiners documented 126 instances in which settlements were reduced by unsupported depreciation. While the files specify a dollar amount for depreciation, they do not contain justification or any basis to indicate that the depreciation applied was discernible, measurable and fair.. These acts are violations of UCP Regulation 2695.3(a ),CIC 790.03(h)(3) and CIC 790.03(h)(5).

Additionally, while not cited as errors, the Companies applied depreciation to labor on items which were to be completely replaced. Labor costs should not be depreciated. The Company's position is attached as Exhibit I-7. <u>This matter is referred to CDI Legal Division for review and opinion.</u>

 Remedial Action: To be determined. The Companies' position is attached as <u>Exhibit I-3.</u>

2. **Lack of Explanation of Settlement Reductions:** In 126 instances the Companies failed to explain depreciation reductions to policyholders. These acts are violations of UCP Regulation 2695.4(a); CIC 790.03(h)(1); CIC 790.03(h)(3).

 Remedial Action: To be determined.

3. **Failure to Document Files:** The Companies failed to properly document files in 14 **instances**. In these cases, there is an absence of billings, letters, complete diary notes, and other essential information substantiating the handling or disposition of the claims. These acts are violations of UCP Regulation 2695.3(a); CIC 790.03(h)(3).

12

Remedial Action: To be determined.

4. **Failure to Acknowledge Claim Within 15 Days:** In one (1) instance, the company failed to acknowledge a claim within the required period. This act is a violation of UCP Regulation 2695.5(a), CIC 790.03(h)(2), and 790.03(h)(3).

Remedial Action: To be determined.

5. **Inadequate Investigations:** The examiners cited 29 instances in which the Companies failed to perform fair, adequate, correct and/or timely estimating of the insured's damages. In some instances, files in which damages were grossly underestimated included (but were not limited to) the overlooking of crawl spaces, fireplaces and whole rooms. Some of these files reveal: 1) insureds were required to request additional inspections (especially) when confronted with estimates by contractors (hired by the insured) indicating damages which substantially exceeded the Companies' original settlement offers; 2) as a result of improper investigations, initial settlements were unreasonably low in some instances; 3) in some instances insureds were advised erroneously that damages were less than the deductible; 4) the Companies failed to accomplish investigations in a timely manner; 5) investigations were incomplete in some instances; 6) the Companies failed to investigate ownership of fences prior to settlement (assuming common ownership in all cases). These acts are violations of UCP Regulation 2695.6(a) and CIC 790.03(h)(3) and CIC 790.03(h)(5).

As adjusters used the SDA reports as references, many of the underestimated claims were the bi-products of the these reports. However, when the examiners referred these instances of questionable investigations (which resulted in low settlement offers), Allstate's response indicated that it is their contention that the SDA's are not their Insurance Agents (as defined in the UCP Regulations and CIC) and therefore, they are not responsible for their actions. Allstate was adamant about their position in regard to this matter and offered to discuss it with the CDI Legal Division. An example of a response from the Companies, which is indicative of this issue, is included as **Exhibit I-4.**

**This issue is herein referred to the CDI Legal Division for review, and opinion.**

13

Remedial Action:    To be determined.

6. **Low Settlements:** The examiners detected 21 instances wherein inadequate investigations and/or inspection of damages resulted in unreasonably low settlements. These acts are violations of UCP Regulation 2695.7(g) and CIC 790.03(h)(5).

Remedial Action:    To be determined.

7. **Failure to Waive Hold Back and Pay RC:** This issue involves the hold back as explained in the GLOSSARY. According to the Companies' regular procedure, the amount withheld is paid when proof of purchase is received. During the course of this examination, it was found that Allstate made a "business decision" to waive the "hold back" in all Northridge EQ claims under policies which provided RC coverage (See Exhibit I-5) However, the examiners detected that the hold back waiver was applied inconsistently. Consequently, the examiners documented 40 instances, in which policyholders were underpaid These acts are violations of UCP Regulation 2695.7(g), and CIC 790.03(h)(3).

It should be noted that in January of 1995, Allstate made business decision to discontinue its practice of including carpet losses in the waiver of the "hold back". While no citations were issued for this particular issue, the Examiners are concerned with the Company's position (outlined in Exhibit I-5). This issue is herewith referred to CDI Legal Division for review and opinion. --

Remedial Action:    To be determined. (See Recoveries Section)

8. **Hold Back Recovery Process and Debris Removal Benefits not Explained to Policyholder:** When the hold back was not waived, the company failed to provide appropriate instructions to policyholders outlining how to receive the withheld amounts. Additionally, policyholder were not consistently advised of their debris removal benefits. . The Examiners documented 60 instances involving these issues.

14

It is be noted, the Companies' advised that although it was not always documented in the files, policyholders were routinely supplied with a copy of the policy and a booklet entitled "Things You Should Know About The Claim Handling Process". The booklet is included as **Exhibit I- 6**. The examiners consider the booklet to be a reference that might benefit policyholders if used in conjunction with the policy. However, it is not acceptable as a substitute for explanations concerning available coverages and/or the claims handling process. These acts are violations of UCP Regulation 2695.4(a), CIC 790.03(h)(1), and 790.03(h)(3).

<u>Remedial Action:</u>        To be determined.

9. <u>Failure to Accept or Deny Claim Within 40 Days of Receiving Proof of Claim:</u>
In one (1) instance, the Company failed to accept or deny a claim immediately or within 40 days of the receipt of proof. This act is a violation of UCP Regulation 2695.7(b) and CIC 790.03(h)(4).

<u>Remedial Action:</u>        To be determined.

10. <u>Failure to Provide Factual Basis for Denial:</u>        The Examiners discovered 3 instances wherein the factual bases for the denial of the claims were not provided to the policyholders. These acts are violations of UCP Regulation 2695.(7)(b)(1) and CIC 790.03(h)(3).

<u>Remedial Action:</u>        To be determined.

11. <u>Failure to Include CDI Information in Denial Notice:</u>        In 3 instances, the Companies failed to include information as regards the right to have the claim reviewed by the CDI. These acts are violation of FCP Regulation 2695.7(b)(3) and CIC 790.03(h)(3).

<u>Remedial Action:</u>        To be determined.

15

Case 2:14-cv-04171-SRB   Document 58-6   Filed 12/18/14   Page 18 of 20

12. **Failure to Issue Status of Investigation Letters:** In 3 instances, the Companies failed to advise insureds that additional time was needed to investigate claims These acts are violations of UCP Regulation 2695.(7)(c)(1) and CIC 790.03(h)(3).

   **Remedial Action:** To be determined.

13. **Requested Information Not Reasonably Required:** The Examiners discovered 2 instances wherein the Companies sought information not reasonably required for or material to the resolution of the claim. These acts are violations of UCP Regulation 2695.(7)(d) and CIC 790.03(h)(3).

   **Remedial Action:** To be determined.

14. **Failure to Tender Payment Within 30 Days:** In one (1) instance, the Company failed to tender payment immediately or within 30 days. This act is a violation of UCP Regulation 2695.(7)(h) and CIC 790.03(h)(5)..

   **Remedial Action:** To be determined.

15. **Incorrect Application of Depreciation:** In 6 instances, the Examiners noted that depreciation was inappropriately applied to items that were repaired (versus replaced). For the most part, these reductions were applied to labor charges. These acts are inconsistent with industry practice and are violations of CIC 790.03(h)(3) and 790.03(h)(5).

   **Remedial Action:** The Companies' responses indicated that these situations were errors and the policyholders would be reimbursed (See Recoveries Section).

16. **Failure to Report Suspected Fraud to CDI:** The Examiners discovered 2 instances wherein the Companies failed to report suspected fraudulent claims to the CDI. These acts are violations of CIC 1872.4.

16

<dl>
<dt>Remedial Action:</dt>
<dd>To be determined.</dd>
</dl>

17. **Pending Reimbursement Checks:** As a result of referrals submitted by the Examiners regarding Allstates' claims handling practices, the Companies issued reimbursements to policyholders amounting to $34,343.52 (as of the date the on site examination was terminated). Further, the Examiners identified an additional $80,404.07 which is owed to policyholders.

<dl>
<dt>Remedial Action:</dt>
<dd>Allstate management indicated that pending recoveries would be sent to the Los Angeles CDI office as soon as possible. As of the date of this report, verification of payments has not been received.</dd>
</dl>

was decided that hold back waivers would not apply to carpets. When the Examiners inquired about the modified procedure, Allstate provided a full explanation which is presented as Exhibit I-5.