# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

| | |
|---|---|
| DARNITA RIGGINS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN FAMILY MUTUAL INSURANCE COMPANY,<br><br>Defendant. | Case No. 2:14-cv-04171-SRB |

## DEFENDANT'S SUGGESTIONS IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION TO CERTIFY CLASS

# TABLE OF CONTENTS

Page

ARGUMENT ................................................................................................................................... 3

    A.    The determination of what American Family owes any policyholder will require predominantly individualized inquiries, contrary to the demands of Rule 23(b)(3). ................................................................................................................. 3

    B.    *LaBrier* confirms that the presence of uninjured class members also precludes class certification under Rule 23(b)(3). .................................................. 7

    C.    The need to individually review almost 200,000 paper files and extract related electronic data just to ascertain members of the proposed class precludes certification under Rule 23(b)(3). ............................................................ 9

    D.    Calculating damages will require an individualized review of thousands of claim files and related electronic data, precluding any finding of predominance or superiority under Rule 23(b)(3). ............................................... 10

CONCLUSION .............................................................................................................................. 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Amchem Prod., Inc. v. Windsor*,
 521 U.S. 591, 117 S.Ct. 2231 (1997) ..................................................................................10

*Comcast Corp. v. Behrend*,
 133 S.Ct. 1426 (2013) ......................................................................................................3, 11

*Halvorson v. Auto–Owners Ins. Co.*,
 718 F.3d 773 (8th Cir. 2013) .....................................................................................5, 8, 9, 10

*In re State Farm Fire Cas. Co.*,
 872 F.3d 567 (8th Cir. 2017) ............................................................................................ passim

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
 644 F.3d 604 (8th Cir. 2011) ....................................................................................................8

*Perrin v. Papa John's Int'l, Inc.*,
 4:09CV01335 AGF, 2014 WL 306250 (E.D. Mo. Jan. 28, 2014) ............................................7

*Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*,
 821 F.3d 992 (8th Cir. 2016) ..................................................................................................10

*Stuart v. State Farm Fire and Cas. Co.*,
 No. 16-3784 (8th Cir. 2016) .....................................................................................................7

**STATE CASES**

*Dollard v. Depositors Ins. Co.*,
 96 S.W.3d 885 (Mo. App. 2002) ..............................................................................................6

**RULES**

Rule 23 ............................................................................................................................................1

Rule 23(b)(3) ........................................................................................................................... passim

Rule 23(f) .......................................................................................................................................7

The Eighth Circuit's reversal of class certification in *In re State Farm Fire Cas. Co.*, 872 F.3d 567 (8th Cir. 2017) ("*LaBrier*") makes clear that the Missouri common law definition of actual cash value (ACV) applicable in *LaBrier* is entirely consistent with the express contractual definition at issue in this case. In particular, the Eighth Circuit's discussion of the meaning of "depreciation" in the context of a homeowner's insurance policy confirms that American Family properly applied depreciation to both materials and labor in calculating ACV. Because plaintiff Riggins has predicated her request for class certification here on the same theory of liability advanced in *LaBrier* (*i.e.,* claiming that labor costs can never be depreciated to calculate ACV), the outcome in this case is the same and class certification must be denied.

As explained in American Family's most recent motion for summary judgment, *LaBrier* further clarified that the unambiguous meaning of "depreciation" and "actual cash value" under Missouri law precludes any categorical exclusion of labor costs when applying depreciation to arrive at ACV under American Family's policy. Contrary to the efficiency goals of Rule 23, Riggins would then have the court gather potentially thousands of policyholders into a single lawsuit for the purpose of litigating a legal theory—*i.e.,* that labor costs are *never* depreciable— that the Eighth Circuit has squarely rejected in *LaBrier.*

Nor can Riggins otherwise meet her Rule 23 burden. The *LaBrier* opinion affirms what American Family demonstrated in its previous opposition to class certification: actual cash value determinations under American Family policies raise predominately individual questions, precluding any certification of a Rule 23(b)(3) class. First, *LaBrier* makes clear that while the ACV payments are necessarily *estimates*—American Family must estimate the replacement costs and degree of physical deterioration and obsolescence of the insured property—"actual cash value" is a contractually-defined sum (*i.e.,* the "the amount it costs to repair or replace [the

1

damaged portion of the policyholder's] property with property of like kind and quality less depreciation for physical deterioration and obsolescence"). RigginsPolicy000025. *LaBrier* further explains that ACV "estimates" remain "subject to review by a jury," absent appraisal or other agreement. *LaBrier,* 872 F.3d at 576. Thus, contractual liability is an inherently individualized issue because the American Family policy language, "less depreciation for physical deterioration and obsolescence," is indistinguishable from the unambiguous interpretation of depreciation adopted by *LaBrier*. *See Id.* at 574 ("Depreciation is a concept with a well understood meaning—decline in an asset's value because of use, wear obsolescence, or age") (internal quotation and citation omitted). Here, as in *LaBrier,* individual questions relating to the contractual sufficiency of estimated payments will overwhelm common questions, thus precluding satisfaction of the predominance requirement of Rule 23(b)(3).

And even without *LaBrier,* Riggins offers no way around fundamental barriers to class certification. In its original briefing, American Family established that: 1) the proposed class may not be certified because it includes members who lack standing because they suffered no injury-in-fact; 2) the need to individually review almost 200,000 paper files and extract related electronic data just to ascertain the identity of members of the proposed class precludes certification under Rule 23(b)(3); and 3) calculating damages would require an individualized review of tens of thousands of claim files and related electronic data, precluding any finding of predominance or superiority under Rule 23(b)(3). (American Family's August 30, 2016 Suggestions in Opposition to Plaintiff's Renewed Motion to Certify Class ("Suggestions in Opposition"), ECF No. 163). Each of these arguments, let alone all of them, precludes certification of the proposed class.

Riggins's motion amounts to a five-page effort to walk back her previous assertion that

*LaBrier* was effectively identical to this case. (July 29, 2016 Suggestions in Support of Renewed Motion to Certify Class, ECF No. 155, at p. 5 (describing *LaBrier* as "an almost identical case")). Despite plaintiff's revisionist discovery of unconvincing distinctions between this case and *LaBrier*, she remains unable to show *through evidentiary proof* that "questions of law or fact common to class members predominate over any questions affecting only individual members." *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1430, 1432 (2013) (citing Fed. R. Civ. P. 23(b)(3)). As set out below, *LaBrier* requires that Riggins's renewed motion be denied.

## ARGUMENT

### A. The determination of what American Family owes any policyholder will require predominantly individualized inquiries, contrary to the demands of Rule 23(b)(3).

The Eighth Circuit's reversal of class certification in *LaBrier* precludes Rule 23(b)(3) certification because the law is now clear that ACV payments must *estimate* the actual cash value of depreciated property and the amount that American Family is contractually obligated to pay will therefore depend on predominantly individual questions of fact. First, in replacement cost policies like those of State Farm and American Family, insurance companies must "efficiently determine and pay" ACV—*i.e.,* the value of the insured's property in its depreciated condition—to "help the insured finance repair and replacement if she elects to do so, since payment of the additional replacement cost coverage may not be made until repairs are completed." *LaBrier*, 872 F.3d at 575. Second, the Court explained that this timing necessarily requires that ACV payments be made based upon *estimates*. Indeed, insurers generally calculate ACV by depreciating repair or replacement costs *before those costs have been incurred*, and must also estimate the "depreciation" of the pre-loss property, including its degree of

3

US.115028396.08

Case 2:14-cv-04171-SRB Document 207 Filed 12/07/17 Page 6 of 15

obsolescence and physical deterioration. *Id.* at 576[1] (concluding that "[a]n equally significant error [in the district court's decision] was to ignore the fact that, while the policy's replacement cost coverage obligated State Farm to estimate actual cash value and replacement cost and make an initial actual cash value payment, these estimates were not agreed to by LaBrier…"). And third, the Court held that unless policyholders agree to ACV estimates as through appraisals, contractual liability must ultimately be determined by a jury—making the insurer's liability to any policyholder always an individualized question of fact. *LaBrier*, 872 F.3d at 576.

Under American Family's policy here, the definition of "actual cash value" requires all replacement costs (including labor) to be depreciated. This contractual interpretation of the unambiguous policy language tracks closely with and is supported by the Missouri common law interpretation of ACV developed by the Eighth Circuit in *LaBrier*. Indeed many of the same significant individualized questions identified by *LaBrier* will be present here. A policyholder or American Family might challenge, for example, whether American Family accurately estimated the cost of materials or labor needed to construct property of like quality and kind. Likewise, new information might call American Family's estimate of the age or degree of physical deterioration of the property before the loss into question. These questions require individualized answers *before* American Family's contractual liability to any policyholder can be established. Thus while the term "actual cash value" has an unambiguous meaning under American Family policies—just as it "has an unambiguous meaning" under Missouri [common]

---

[1] The Court further explains: "[I]f the insured installed a new roof the day before a storm caused its total collapse, the immediately-before value and the actual cash value of the loss will doubtless be the full cost paid to the contractor to install the now-worthless roof. But roofs deteriorate over time (some more than others), and under an actual cash value policy the insured bears the share of the loss resulting from this deterioration. Therefore, a reduction in the immediately-before value of the property must be estimated." *LaBrier*, 872 F.3d at 574 (citation omitted).

4

US.115028396.08

law—a host of individual inquiries necessary to determine that value defeat any finding of predominance under Rule 23(b)(3). *Id.* at 576-77 (holding "the decision certifying a class in *LaBrier III* must be reversed") (citing *Halvorson v. Auto–Owners Ins. Co.,* 718 F.3d 773, 779–80 (8th Cir. 2013)).

Nor can the Court's previous rulings on summary judgment eliminate those predominantly individual questions. Riggins cites to this Court's March 27, 2015, order denying summary judgment and the corresponding hearing transcript for her argument that *LaBrier* is irrelevant and that labor cannot be depreciated. (*See* November 2, 2017 Plaintiff's Suggestions in Support of Second Renewed Motion to Certify Class, ECF No. 197, at p. 3). However, that Order proceeded from the assumption that policies without a definition of actual cash value are ambiguous, and based on that assumption, construed depreciation not to apply to labor. As Riggins notes, this Court described "the no definition cases" as "all ambiguity evaluations." *Id.* (citing Transcript of March 23, 2015 hearing on Defendant's Motion for Summary Judgment). That Order, however, has now been superseded by *LaBrier*, which held that actual cash value and depreciation are unambiguous terms with well-accepted meanings under Missouri common law. But *LaBrier* makes clear that, given the established meaning of those terms, labor costs cannot be categorically excluded from the depreciation calculation.

Neither can this Court's November 17, 2016 ruling on summary judgment eliminate the presence of predominantly individual questions. Addressing ACV estimates in the context of American Family policies, this Court has reasoned that:

> [Importing the policy definition into section (b)(2) of the policy, the] provision reads, "If **at the time of loss**, the Increased Building Limit Coverage as provided under the Supplementary Coverages – Section I applies and the building is not repaired or replaced, we will pay [the amount it costs to repair or replace property with property of like kind and quality less depreciation for physical deterioration and obsolescence] **at the time of loss** of the damaged portion of the building up to

5

US.115028396.08

> the limit applying to the building."….<u>ACV payments according to the policy are tied to estimates of repair or replacement "at the time of loss" less depreciation</u> and less the deductible. <u>The policy does not allow the payment to be lowered if subsequent repair or replacement costs are lower than the ACV payment</u>.

(November 17, 2016 Order Denying American Family's Motion for Summary Judgment, ECF No. 183 at p. 7-8). But as *LaBrier* makes clear, "at the time of loss" ties ACV payments to the *value* of the insured's property at the time of the loss—*i.e.,* its value in a depreciated condition.[2] This is because "the insured bears the share of the loss resulting from deterioration, obsolescence, and similar depreciation of the property's value at the time of the loss." *LaBrier,* 872 F.3d at 573 (*citing Dollard v. Depositors Ins. Co.*, 96 S.W.3d 885, 889 (Mo. App. 2002)). The phrase "at the time of loss" could *not*, in contrast, transform American Family's estimated payment into a measure of contractual liability. *Id.* Though all replacement cost policies obligate insurers to act promptly, nowhere does the American Family policy use the word "estimate," nor does it otherwise define ACV as the *estimate* from this (often) interim payment.[3] Thus, because the estimated payment is not the final measure of contractual liability, American Family is not bound by estimates it must make before all relevant information becomes available. Where evidence reveals, for example, that an estimate was too high (as where the cost of actually replacing property is less than the estimated cost)—which can only be determined on an individualized basis—that overpayment may offset any depreciation of labor costs, precluding any contractual liability.

Riggins's reliance on *Stuart v. State Farm Fire and Cas. Co.*, No. 16-3784 (8th Cir.

---

[2] The phrase "at the time of the loss" is not a placeholder for *when* an estimate is made, but specifies that the property is valued in its depreciated condition.

[3] While overestimating ACV payments may not entitle American Family to claw back money already paid to insureds, basic principles of indemnity preclude any finding of liability unless a jury determines that an ACV payment for all components of a claim falls short of the actual amount owed. *See* discussion at B, *infra*.

2016) is also inapposite. Her brief urges the Court to ignore *LaBrier* merely because the Eighth Circuit has lifted its stay to resume briefing in *Stuart*, another case about labor depreciation under an insurance policy that defines actual cash value. But more significant by far is the Eighth Circuit's acceptance of State Farm's Rule 23(f) appeal, setting review of the district court's grant of class certification. *See Perrin v. Papa John's Int'l, Inc.,* 4:09CV01335 AGF, 2014 WL 306250, at *2 (E.D. Mo. Jan. 28, 2014) ("In the case of a ruling granting class certification, Rule 23(f) appeals typically are permitted if the ruling raises the stakes of the litigation so substantially that the defendant likely will feel irresistible pressure to settle, or the appeal would clarify an important, unsettled question of law") (citation omitted). At minimum, *Stuart* confirms that a district court order which equates an insurer's *method* for calculating ACV payments with contractual liability warrants immediate scrutiny, irrespective of whether the policy defines actual cash value. *See* discussion at B, *infra.*

In sum, Riggins's declaration that *LaBrier* "has no impact on the predominance analysis in this case" disregards the Eighth Circuit's distinction between *estimated* and *actual* contractual liability for ACV. Because only individualized evidence can determine American Family's ultimate contractual liability to any policyholder, "*no* predominant common facts [are] at issue." *LaBrier*, 872 F.3d at 576. As in *LaBrier*, Riggins cannot satisfy the predominance requirement of Rule 23(b)(3).

### B. *LaBrier* confirms that the presence of uninjured class members also precludes class certification under Rule 23(b)(3).

*LaBrier* also confirms that the proposed class cannot be certified because it includes members who suffered no injury-in-fact and therefore lack standing to sue American Family. First, *LaBrier's* distinction between estimated ACV payments and contractually-defined ACV

7

liability (potentially established only after jury trial adjudication) confirms the general standing problem already identified by American Family: "certain putative class members suffered no injury simply because American Family sometimes over-estimates replacement costs—or under-estimates the physical depreciation—of damaged property." (August 30, 2016 Suggestions in Opposition, ECF No. 163, at p. 10). In each of these instances, the policyholder received no less than the policy entitled her to, irrespective of how that payment was calculated. Certification of the putative class thus violates the rule stated in *Halvorson v. Auto-Owners Ins. Co*: "In order for a class to be certified, each member must have standing and show an injury in fact that is traceable to the defendant and likely to be redressed in a favorable decision." 718 F.3d at 778-79 (citation omitted). The principle that a "district court may not certify a class ... if it contains members who lack standing" is the settled law of this Circuit. *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011).

Second, *LaBrier* clarifies that policyholders like Riggins have no standing to sue. A "true indemnity payment," the Court explains, "is all the law allows an insurer to pay if the insured elects not to repair." *LaBrier*, 872 F.3d at 575 (emphasis added). Thus, the ACV payment required by American Family policies cannot exceed the value of the policyholder's property in its depreciated condition at the time of loss. *Id.* at 573 (the "insured who suffers a covered loss is entitled to receive full, but not more than full, value for the loss suffered, to be made whole but not be put in a better position than before the loss.") (emphasis added). But any ACV payment greater than the actual cost of replacing damaged property with property of like kind and quality will necessarily exceed its actual cash value (*i.e.,* the value of that property in a *depreciated* state). Thus, as American Family has explained, two additional kinds of putative class members suffered no injury:

8

US.115028396.08

Case 2:14-cv-04171-SRB   Document 207   Filed 12/07/17   Page 11 of 15

- Policyholders who replaced their damaged property with property of like kind and quality for as little or less than the amount of their ACV payment; and

- Policyholders who received an ACV payment that exceeded replacement costs for some component of their damaged property by an amount equal to, or greater than, the amount of labor depreciation for the entire claim.

The presence of these putative class members without standing alone precludes certification under Rule 23(b)(3). (August 30, 2016 Suggestions in Opposition, ECF No. 163 at p. 8-10).

Finally, *LaBrier* confirms that the presence of these uninjured putative class members also destroys Rule 23(b)(3) predominance. As authority supporting its reversal of class certification, *LaBrier* cited *Halvorson v. Auto-Owners Ins. Co.*—an Eighth Circuit case holding that individual questions about *which* policyholders suffered no contractual injury predominated over common questions about the *how* the insurer calculated policyholder benefits. 718 F.3d at 779. Here, too, individual inquiries will be needed to determine *which* policyholders suffered no contractual injury. Not just Eighth Circuit precedent on standing, but also *Halvorson's* analysis of predominance thus precludes certification of the proposed class.

## C. The need to individually review almost 200,000 paper files and extract related electronic data just to ascertain members of the proposed class precludes certification under Rule 23(b)(3).

Beyond the issues addressed by *LaBrier,* insurmountable difficulties in ascertaining members of the putative class bar Rule 23(b)(3) certification. Whereas class actions are meant to "achieve economies of time, effort, and expense," *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 593, 117 S.Ct. 2231 (1997), Riggins's expert admits that each of nearly 200,000 claim files, along with corresponding Xactimate data, must be reviewed to merely determine who is in the class. (August 30, 2016 Suggestions in Opposition, ECF No. 163 at p. 17). These individualized

inquiries are incompatible with class certification, flunking the predominance requirement and defeating any assertion that class proceedings would provide an economical or superior method of litigating claims. *See Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, 821 F.3d 992, 996 (8th Cir. 2016) (explaining that the Eighth Circuit requires courts to rigorously analyze administrative infeasibility and predominance problems under the rubric of Rule 23(a) and 23(b)(3)).

**D. Calculating damages will require an individualized review of thousands of claim files and related electronic data, precluding any finding of predominance or superiority under Rule 23(b)(3).**

Finally, *LaBrier* confirms that the proposed class cannot satisfy Rule 23(b)(3)'s predominance requirement based on the need for individualized damages calculations alone. *LaBrier's* conclusion that ACV *estimates* do not bind policyholders necessarily means that policyholders can challenge in court all American Family estimates. Adjudicating the amount of any contractual injury would plunge any class action into a morass of mini-trials. And even accepting American Family's estimates would require hopelessly individualized calculations. Following months of discovery, Riggins's class certification briefs fail even to describe a method for calculating individual damages. To the contrary, Riggins's own expert concedes that individual calculations will require the page-by-page review of perhaps tens of thousands of paper files and line-by-line extraction of related Xactimate data. Indeed, Riggins's expert found the process so complex that he was unable to recount all of the necessary steps. (August 30, 2016 Suggestions in Opposition, ECF No. 163 at p. 20-22).

After *Comcast*, this record falls far short of what is needed for class certification. Where, as here, a plaintiff cannot show "damages are susceptible of measurement across the entire class," then "questions of individual damage calculations will inevitably overwhelm questions

10

common to the class," precluding certification under Rule 23(b)(3). *Comcast*, 133 S.Ct. at 1433.

## CONCLUSION

As *LaBrier* confirms, Riggins has not and cannot show common issues predominate or otherwise meet her evidentiary burden under Rule 23(b)(3). For this and all reasons set out in American Family's August 30, 2016 Suggestions in Opposition to Plaintiff's Renewed Motion to Certify Class (incorporated here), Riggins's Second Renewed Motion to Certify Class must be denied.

Respectfully submitted this 7th day of December, 2017.

*s/Lisa M. Bolliger*

James D. Griffin, MO #33370
Lisa M. Bolliger, MO #65496
SCHARNHORST AST KENNARD GRIFFIN, PC
1100 Walnut, Suite 1950
Kansas City, Missouri 64106
Phone: (816) 268-9400
Fax: (816) 268-9409
Email: jgriffin@sakg.com
      lbolliger@sakg.com

Michael S. McCarthy (*pro hac vice*)
Margaret Y. Cass (*pro hac vice*)
FAEGRE BAKER DANIELS LLP
1700 Lincoln Street, Suite 3200
Denver, Colorado 80203
Phone: (303) 607-3500
Fax: (303) 607-3600
Email: michael.mccarthy@FaegreBD.com
      maggie.cass@faegrebd.com

*Attorneys for Defendant American Family Mutual Insurance Company*

US.115028396.08

# CERTIFICATE OF SERVICE

   I hereby certify that on this 7th day of December, 2017, the above and foregoing **DEFENDANT'S SUGGESTIONS IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION TO CERTIFY CLASS** was filed and served via the CM/ECF system to the following:

David T. Butsch
Christopher E. Roberts
BUTSCH ROBERTS & ASSOCIATES LLC
231 South Bemiston Ave., Suite 260
Clayton, MO 63105
(314) 863-5700 (telephone)
(314) 863-5711 (fax)
Butsch@ButschRoberts.com
Roberts@ButschRoberts.com

Admitted *Pro Hac Vice*

Joe D. Jacobson
GREEN JACOBSON, P.C.
7733 Forsyth Blvd., Ste. 700
Clayton, MO 63105
(314) 862-6800 (telephone)
(314) 862-1606 (fax)
Jacobson@stlouislaw.com

*Attorneys for Plaintiffs*

                *s/Lisa M. Bolliger*_____
                Attorney