IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| DARNITA RIGGINS, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:14-cv-04171-SRB ) |
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) |

**ORDER**

Before the Court is Defendant American Family Mutual Insurance Company's Motion for Summary Judgment (Doc. #194) and Plaintiff's Second Renewed Motion to Certify Class (Doc. #196). For the following reasons the motion for summary judgment (Doc. #194) is GRANTED, and Plaintiff's claims are dismissed with prejudice. The motion for class certification (Doc. #196) is DENIED as moot.

**I.  Background**

This matter involves an insurance dispute regarding the interpretation of Plaintiff Donita Riggins' homeowner's policy. The parties agree as to the facts relevant to the Court's decision, and the following summary is taken from the parties' uncontroverted statements of fact. On April 28, 2012, a hail storm damaged the roof, gutters, and downspouts of Plaintiff's residence. Plaintiff made a claim for the damage to her dwelling under her homeowner's policy with Defendant. The policy gave Plaintiff two options in the event of property damage: (1) receive the cash value of what was damaged at the time it was damaged (actual cash value) or (2) receive the money to replace the damaged property (replacement cost). Plaintiff's policy defines "actual

cash value" as "the amount it costs to repair or replace property with property of like kind and quality less depreciation for physical deterioration and obsolescence." (Doc. #195-2, p. 25). In calculating the "actual cash value" payment to Plaintiff under the policy, Defendant depreciated the entire estimated cost of repair, including materials and labor.

Plaintiff brings a purported class action asserting two claims against Defendant. (Doc. #133). In Count I Plaintiff asks for declaratory judgment "that [Defendant's] depreciation of labor costs [are] contrary to its written policy of insurance issued to the named [P]laintiff and members of the [P]laintiff Class[.]" (Doc. #133, p. 9). In Count II Plaintiff alleges that "[b]y depreciating labor in the calculation of the named [P]laintiff's [actual cash value] payments, [Defendant] breached its obligations to the [P]laintiff under her written insurance policy." (Doc. #133, p. 9). Defendant originally sought a decision by this Court on Defendant's first summary judgment that its calculation of "actual cash value," which included depreciation of labor costs, was proper, and that Plaintiff received the payment due to her under the policy. Plaintiff opposed Defendant's motion on the basis that the terms of Plaintiff's policy do not allow depreciation of labor costs in calculating "actual cash value." On March 27, 2015, this Court denied Defendant's first motion for summary judgment. This Court, at that time, found:

> Focusing solely on the plain and unambiguous language in Plaintiff's policy, this Court finds that the phrase "for physical deterioration and obsolescence" limits the type depreciation that may be factored into a calculation of "actual cash value." As a result, Defendant's calculation of the "actual cash value" due to Plaintiff under her policy, which included a depreciation factor applied to the entire estimated cost of repair, was improper.

(Doc. #72, p. 4).

On January 6, 2017, before issuing a decision on class certification, this Court stayed proceedings pending resolution of *In re State Farm Fire & Casualty Co.* ("*LaBrier*") that was on appeal in the Eighth Circuit, because the outcome of *LaBrier* could impact this Court's decisions

2

in this case. 872 F.3d 567, 570 (8th Cir. 2017). On September 25, 2017, the Eighth Circuit issued its ruling. Defendant then filed a renewed motion for summary judgment arguing that the *LaBrier* ruling necessitated a change from this Court's prior ruling and warranted summary judgment. The question before this Court is whether Defendant's practice of deducting labor depreciation from the estimated repair cost in determining the actual cash value breached Plaintiff's insurance contract.

**II.     Legal Standard**

Fed. R. Civ. P. 56(a) provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "In disputes involving the interpretation of unambiguous contracts, the Eighth Circuit has consistently upheld the appropriateness of summary judgment." *Victor v. Home Sav. of America*, 645 F. Supp. 1486, 1489 (E.D. Mo. 1986) (citing *Howard v. Russell Stover Candies, Inc.*, 649 F.2d 620, 623 (8th Cir. 1981)). Accordingly, if the Court finds that there was no breach of contract, then summary judgment must be granted.

"As this action is in federal court based on diversity of citizenship, state law governs substantive law issues." *Paine v. Jefferson Nat. Life Ins. Co.*, 594 F.3d 989, 992 (8th Cir. 2010). There is no dispute that Missouri law is the controlling substantive law. "It is well-settled law in Missouri that when interpreting the language used in an insurance policy, the court gives the term its ordinary meaning, unless it appears a technical meaning was intended." *Id.*  Where, as here, no controlling state decision exists, our task is to follow the Eighth Circuit's prediction of how the state Supreme Court would resolve the legal issue facing this Court.

3

## III. Discussion

Defendant argues, "Since this Court entered [its original summary judgment order], the Eighth Circuit [in *LaBrier*] has clarified the meaning of depreciation and 'actual cash value' under Missouri law and as those terms are generally used in replacement cost homeowner's insurance policies." (Doc. #195, p. 4). Plaintiff argues that "*LaBrier* imposes a 'common law' definition of [actual cash value] only to those insurance policies where [actual cash value] is not contractually defined. Since the policy [Defendant] issued to [Plaintiff] contractually defines [actual cash value], *LaBrier* is by its own analysis inapplicable." (Doc. #204, p. 2).

In *LaBrier* the plaintiff's house was damaged by a hailstorm. *In re State Farm Fire & Cas. Co.*, 872 F.3d at 570. The plaintiff had a homeowner's policy from defendant. *Id.* That policy's Loss Settlement provisions stated that, "until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property . . . not to exceed the cost to repair or replace the damaged part." *Id.* "The policy [did] not define actual cash value."[1] *Id.* The plaintiff filed suit alleging defendant's practice of deducting labor depreciation from the estimated repair cost in determining the actual cash value breached the insurance contract. *Id.* at 571. The defendant moved to dismiss the case, which the district court denied.

After discovery and briefing on a motion to certify, the district court granted class certification. The Eighth Circuit granted leave to appeal the class certification order. The Eighth Circuit reversed class certification and ordered dismissal of plaintiff's complaint on remand

---

[1] The Eighth Circuit goes on to mention that "[defendant] provide[d] insureds a 'Building Estimate Summary Guide' that explains, 'Net Actual Cash Value Payment' means '[t]he repair or replacement cost of the damaged part of the property less depreciation and deductible,' and defines 'depreciation' as '[t]he decrease in the value of property over a period of time due to wear, tear, condition, and obsolescence.'" *In re State Farm Fire & Cas. Co.*, 872 F.3d at 570. The Eighth Circuit does not expand on the relevance of the Building Estimate Summary Guide nor does the Court mention the Guide again.

4

based on the holding "that [defendant's] method of determining estimated 'actual cash value' does not breach its replacement cost contract[.]" *Id.* "While the term 'actual cash value' has an unambiguous meaning under Missouri [common] law—the difference in the fair market value of the damaged property immediately before and after the loss—it is a value that must be estimated." *In re State Farm Fire & Cas. Co.*, 872 F.3d at 574.[2] "A 'depreciation' deduction is the most common, but not the only acceptable method of estimating the reduced fair market value of damaged property." *Id.* "'Depreciation' is a concept with a well understood meaning—'decline in an asset's value because of use, wear, obsolescence, or age.'" *Id.* (quoting *Depreciation*, Black's Law Dictionary (9th ed. 2004)). "[D]etermining actual cash value by depreciating replacement cost—the method employed by defendant in [*LaBrier*] and apparently by most property insurers nationwide—is an eminently practical and reasonable method for making an initial *estimate* of actual cash value at the time of loss." *Id.* at 576. There was no dispute that "repair or replacement cost minus depreciation" was a reasonable way to compute actual cash value. *Id.*

In *LaBrier* the defendant "depreciate[d] *the full replacement cost* of the asset, typically, the amount a contractor will charge to replace the roof and other damaged parts, which includes the cost to install as well as the cost of materials." *Id.* (emphasis original). The plaintiff argued that the inclusion of labor in the depreciation calculation was improper. The Eighth Circuit held that "[i]n evaluating a depreciation method in this context, it matters not whether 'labor' is customarily depreciated in other business accounting contexts. The question is whether depreciating what a contractor will charge to replace the partial loss is a reasonable method of

---

[2] Missouri law defines "actual cash value" as a "depreciated sum, i.e., the difference between the reasonable value of the property immediately before and immediately after the loss." *Porter v. Shelter Mut. Ins. Co.*, 242 S.W.3d 385, 390 (Mo. Ct. App. 2007) (citing *Wells v. Missouri Prop. Ins. Placement Facility*, 653 S.W.2d 207 (Mo. 1983) and *Dollard v. Depositors Ins. Co.*, 96 S.W.3d 885 (Mo. Ct. App. 2002)).

5

estimating 'the difference in value of the property immediately before and immediately after the loss.'" *Id.* The Eighth Circuit reversed the district court, essentially holding that there was no *per se* breach of contract for including labor in the depreciation calculation when there was no specific exclusion of labor in the "actual cash value" definition. *Id.* at 577; *see also Graves*, 686 F. App'x at 540 (The Tenth Circuit saw "no reason to dissect depreciation into separate components of materials and labor costs . . . . Based on the plain and ordinary meaning of 'depreciation,' a reasonably prudent insured would not expect the insurer to apply such an unorthodox depreciation method when determining the actual cash value.").

Here, Plaintiff attempts to distinguish the present case from *LaBrier* on the fact that in *LaBrier* there was no policy definition of "actual cash value." While Plaintiff's policy has a definition of actual cash value, the definition offers no substantive distinction from *LaBrier*. Both the policy in *LaBrier* and in this case incorporate the general definition of depreciation. In *LaBrier* the common law definition of "actual cash value," used in connection with the widely-accepted definition of "depreciation," was used to determine that a depreciation that included labor was not a breach of contract. Here, the definition of "actual cash value" in Plaintiff's policy—the amount it costs to repair or replace property with property of like kind and quality less depreciation for physical deterioration and obsolescence—simply incorporates the widely-accepted definition of depreciation—decline in an asset's value because of use, wear, obsolescence, or age. *Id.* at 574. Thus, *LaBrier* is not distinct.

Additionally, nothing in Plaintiff's policy language limits or excludes labor from the depreciation calculation, signifying that the depreciation relates to the depreciation of the total estimated cost to repair or replace the property. Plaintiff identifies no other substantive

6

distinction between Plaintiff's policy and *LaBrier*. Thus, there is no *per se* breach of contract of Plaintiff's insurance policy, and the Court must grant summary judgment.

**IV. Conclusion**

Accordingly, Defendant's Motion for Summary Judgment (Doc. #194) is **GRANTED.** Plaintiff's claims are dismissed with prejudice. The motion for class certification (Doc. #196) is DENIED as moot.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: December 14, 2017